UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                          v.                                      **Hon. Hugh B. Scott**

                                                            06CR292A

JOSE ELIAS MERCEDES,                                **Report**
                                                             **&**
                    Defendant.                        **Recommendation**
_____

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C). This is a continuation and reassertion of a motion heard by this Court. Now before the Court is defendant's motion (Docket No. 38[1]), renewing defendant's motion to dismiss the Indictment and to suppress defendant's statements (see Docket No. 28) as well as seeking supplemental discovery (Docket No. 38). Responses to this renewed motion were due on March 7, 2008, and the motion was argued on March 11, 2008 (Docket Nos. 37, 40).

This Court will address in this Report & Recommendation defendant's motions to dismiss and to suppress, while separately addressing his discovery motion in an Order. Familiarity with the Order on defendant's initial motion (Docket No. 33) is presumed.

---

[1] In support of this renewed motion is defense counsel's affidavit with exhibits, Docket No. 38, as well as moving papers from the initial motion, Docket No. 28.
     In opposition, the Government filed its second reply statement, Docket No. 38, as well as its initial reply statement, Docket No. 31.

BACKGROUND

The underlying factual issue in this case is defendant's nationality (whether he is Cuban or a citizen of the Dominican Republic) and whether he made false statements about it to immigration agents. Defendant, an alien convict, in effect would not be deported if he is a Cuban national while he would be deported if he is a Dominican. Therefore, a somewhat detailed history of defendant's entry into the United States and his purported nationality is necessary.

Defendant argues that the Government will contend at trial that defendant first arrived in the United States with his father in 1981 on his father Julio Mercedes' diplomatic G-4 visa from the Dominican Republic (Docket No. 38, Def. Atty. Aff. ¶ 28). But the Dominican Republic Embassy has no record of a visa being issued (id. ¶ 30). In 1983, there was an application for a Social Security number for Jose Mercedes, supported by a G-4 visa as proof of identity and the number was issued in 1984 (id. ¶¶ 31, 32). Defendant entered (or re-entered) the United States in 1984 and departed in 1985. Mercedes' father was arrested in 1985 and it was alleged that he entered the United States on that year (id. ¶¶ 34, 35). Defendant himself was arrested in the United States in 1987 after entering earlier that year on a G-4 visa (id. ¶ 37), although the Government argued that it was a typographical error in the criminal Complaint and that the correct year was 1981 (id. ¶ 38). But Bureau of Immigration and Customs Enforcement ("BICE") agent Alvi Castro, in seeking documents from the Dominican Republic, claimed that defendant entered in 1987 (id. ¶ 39).

On August 21, 1987, defendant was convicted in New York County for burglary and was sentenced to one to three years custody (id. ¶ 40). In a notice dated October 15, 1987, the Elmira Correctional Facility sought to confirm defendant's status as a Mariel Cuban (id. ¶ 41). The

Immigration and Naturalization Service ("INS") office in Buffalo devised a work plan to investigate this matter but apparently did not conduct or complete the investigation (see id. ¶¶ 42-44).

Meanwhile, on September 7, 1989, the INS wrote to the Dominican embassy seeking travel documents for the deportation of defendant's father, Julio Mercedes (id. ¶ 45), but the INS information sheet on Julio Mercedes did not list defendant Jose Mercedes as his son (id. ¶ 46).

Defendant was paroled in 1988 and again arrested in 1989, 1991, 1992, and 1995 (id. ¶ 47). Unaware of deportation efforts by the INS, INS agents in the 1990s inquired about defendant's nationality (id. ¶¶ 48, 49-55), with the removal efforts directed at returning defendant to Cuba (id.). In 2000, defendant made statements to INS agents that he was Cuban (id. ¶¶ 56, 57).

In 2001, an immigration judge held a hearing and ordered defendant to be deported to Cuba upon completion of his state criminal sentence (Docket No. 38, Def. Atty. Aff. ¶ 15). Defendant was released from New York State custody and turned over to federal custody for eventual removal. On March 10, 13, and 23, 2006, defendant allegedly made statements to agents of BICE that were contradictory and allegedly false (Docket No. 38, Def. Atty. Aff. ¶ 13) about his nationality. Between 2001 and 2006, there were no further immigration proceedings (id. ¶ 17). Defendant argues that BICE (and its predecessor agency, the INS) did nothing for twenty years to confirm defendant's nationality, instead at one instance noting that they should charge defendant and have him prove that he was a "Mariel" (that is a Cuban Mariel refugee) (id. ¶ 18, Ex. G).

On March 2, 2006, defendant was processed into the Batavia Federal Detention Center and he indicated there that he was Cuban (id. ¶ 19). On March 13, 2006, defendant was interviewed by BICE agent Castro and defendant stated that he was Cuban (id. ¶ 20). Defendant was questioned again on March 23, 2006, by Agent Castro and defendant said that he was, in fact, a Dominican (id. ¶ 21).

*Charges*

On May 26, 2006, defendant was charged in a criminal Complaint with conniving, conspiring, or taking other action to hamper his deportation (in violation of 8 U.S.C. § 1253(a)(1)(C)) and making a materially false statement, in violation of 18 U.S.C. § 1001(a)(2) (Docket No. 1). On September 6, 2006, defendant was indicted in a single count Indictment for making a false statement, in violation of 18 U.S.C. § 1001(a)(2), namely about his nationality (Docket No. 8). The Indictment charges that defendant falsely stated to an agent of BICE that he was a citizen of Cuba when, in fact, he was a citizen of the Dominican Republic (id.; see Docket No. 28, Def. Atty. Aff.. ¶ 2). As the parties appeared to agree upon a plea disposition, defendant waived Indictment and was charged under a superseding Information (Docket Nos. 10, 11; see Docket No. 12 (plea agreement)). Defendant later moved to withdraw this plea (Docket No. 19), which was granted on August 10, 2007 (minute entry, Aug. 10, 2007; see Docket No. 23). The case was referred to the undersigned (Docket No. 22; see Docket No. 15) and the Court entered a scheduling Order (Docket No. 26).

Defendant notes that he has been incarcerated in excess of the time he would have served under the Sentencing Guidelines for the offenses charged (Docket No. 38, Def. Atty. Aff. ¶ 27).

*Defendant's Motions–To Dismiss Indictment*

Defendant renews his motion to dismiss the Indictment, arguing that his statement of March 23, 2006, was not a crime punishable under 18 U.S.C. § 1001, that estoppel doctrines support dismissal, and the Indictment should be dismissed in the interest of justice.  He argues that the Government's case is "replete with inconsistent information or simply has gaps due to a failure to investigate" (id. ¶ 28).  First, based upon the "myriad of inconsistencies in Immigration's own file regarding Defendant's country of origin, it's [sic] failure to take steps to investigate Defendant's nationality over almost a 20-year period, as well as the standing Order of Immigration Judge Levinsky deporting Defendant to Cuba," defendant concludes that the Indictment should be dismissed (id. ¶ 59).  Alternatively, defendant argues that the Indictment is legally insufficient, asserting that defendant's statement did not fall under the false statement prohibition of 18 U.S.C. § 1001 (id. ¶¶ 60-91).  The BICE agent here created a "'fresh denial' from the Defendant with the sole purpose of creating a crime" in order to buy the Government time to circumvent the Order of Removal to Cuba (and, in effect, release defendant from federal custody following his release from state custody) (id. ¶ 67).

Next, defendant contends that collateral estoppel and equitable estoppel should preclude this prosecution (id. ¶¶ 92-99).  It was the Government that argued before Immigration Judge that defendant should be deported to Cuba, therefore it should be estopped from claiming that defendant is making a false statement by claiming Cuban citizenship (id. ¶¶ 94, 95).  Defendant was provided with INS form I-251B, which has no notice that making a false statement on it would subject the defendant to criminal sanction or punishment under § 1001 (id. ¶ 96).

Defendant seeks either dismissal of the Indictment or release upon bail during the pendency of this action (id. ¶¶ 100-01).

The Government argues that the "exculpatory no" doctrine that defendant relies upon has been rejected (Docket No. 39, Gov't 2d Reply at 3-7).  On the estoppel grounds, the Government argues that defendant fails to offer authority[2] for the proposition that an immigration judge's findings estop the Government for criminally prosecuting a defendant (id. at 8).  The Government contends that the immigration judge's findings were based solely on defendant's "self-serving, unsubstantiated, but oft repeated claim of Cuban citizenship" (id. at 9).  The Government distinguished the administrative decision of the immigration judge from the decision to prosecute defendant criminally (id.).

*Motion to Suppress Statements*

Next, defendant moves to suppress his statements made to BICE officer Castro while in the Batavia Federal Detention Center.  Defendant contends that these statements were the product of illegal custodial interrogation and induced by coercion and duress (Docket No. 38, Def. Atty. Aff. ¶ 103).

The Government replies that defendant here was advised of his Miranda rights before being questioned by Castro (Docket No. 39, Gov't 2d Reply at 10-15).  The Government concludes that no hearing is necessary here because defendant fails to support his factual allegations (id. at 14).

---

[2]Nor has the Government.

DISCUSSION

I.      Dismissal of the Indictment

Defendant raises three grounds for dismissal of this case, the so-called "exculpatory no" under § 1001, estoppel grounds, and the inconsistencies in the Government's position in defendant's deportation and criminal proceedings.

Section 1001 provides that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned for no more than 5 years . . . ," 18 U.S.C. § 1001(a).

A.      Inconsistencies in Defendant's Nationality

Defendant argues that the Government has taken inconsistent positions of what his nationality is (whether he is Cuban or Dominican, or whether it was for defendant to establish his nationality) that his statements to BICE agent Castro in March 2006 should not constitute a false statement under 18 U.S.C. § 1001.

These inconsistencies, and defendant's statements about his nationality, are the heart of this prosecution, where the Government would have the burden of showing that the statement (that defendant was Cuban) was false, see United States v. Diogo, 320 F.2d 898, 907 (2d Cir. 1963) (in alien fake marriage case, court held that Government must negative any reasonable interpretation that offending statement is factually correct). Ultimately, these are issues of fact for trial and not a basis for dismissal of the Indictment and it should **not be dismissed on this basis**.

B.      "Exculpatory No" under § 1001

The Supreme Court, in <u>Brogan v. United States</u>, 522 U.S. 398, 408 (1998), rejected the existence of an exception to criminal liability under § 1001 for a mere denial of wrongdoing, a doctrine also known as the "exculpatory no," affirming the Second Circuit's decision in <u>United States v. Wiener, et al.</u>, 96 F.3d 35, 37 (2d Cir. 1996). The Court held that

> "we find nothing to support the 'exculpatory no' doctrine except in the many Court of Appeals decisions that have embraced it. While <u>communis error facit jus</u> may be a sadly accurate description of reality, it is not the normative basis of this Court's jurisdiction. Courts may not create their own limitations on legislation, no matter how widely the blame may be spread. Because the plain language of § 1001 admits of no exception for an 'exculpatory no,' we affirm the judgement of the Court of Appeals,"

522 U.S. at 408.

Defendant cites to Justice Ginsberg's concurrence which cautions against possible prosecutorial abuse of § 1001 (<u>see</u> Docket No. 38, Def. Atty. Aff. ¶¶ 63-66, 68-69).

The <u>Brogan</u> Court (both the majority and the concurring justices) rejected the "exculpatory no" doctrine, 522 U.S. at 408, despite its potential for abuse, <u>see id.</u> at 408, 411, 416 (Ginsberg, J., concurring in the judgment), at 408 (Souter, J., concurring in part and concurring in the judgment). Placed on notice by this decision, Congress has not amended § 1001 to carve out an "exculpatory no" exception.

Defendant also argues that § 1001 originally was meant to penalize those who defraud the United States Government and later amended to protect the government's agencies and departments from deceptive practices (Docket No. 38, Def. Atty. Aff. ¶¶ 88-89, citing <u>United States v. Bedore</u>, 455 F.2d 1109, 1111 (9th Cir. 1972)). The Government does not address this contention. The letter of § 1001, however, reaches any false statement made to a federal agency,

not just those involving a fraudulent claim to the Government.  Cases involving false statements to immigration agents regarding the status of an individual have been upheld as violations of § 1001, see, e.g., United States v. Rodriguez-Rodriguez, 840 F.2d 697, 700-01 (9th Cir. 1988); United States v. Popow, 821 F.2d 483 (8th Cir. 1987); United States v. Mestchersky, 411 F.2d 610 (2d Cir. 1969) (per curiam); Diogo, supra, 320 F.2d 898.  Thus, defendant's motion on this ground should be **denied**.

    C.    Estoppel

Defendant alternatively argues that either collateral or equitable estoppel should preclude this prosecution, since the Government argued in immigration court that defendant was a Cuban national it cannot now claim that he lied when he later said that to a BICE agent.

        1.    Collateral Estoppel

Collateral estoppel is a bar to relitigating an issue which has already been tried between the same parties, see Black's Law Dictionary 261 (6th ed. 1990).  This doctrine, applied in criminal cases, is derived from the Fifth Amendment's guarantee against double jeopardy and bars the Government from relitigating an issue decided in a defendant's favor by a valid final judgment, Ashe v. Swenson, 397 U.S. 436, 443, 445 (1970) (estoppel effect from a criminal prosecution upon a second prosecution); United States v. Citron, 853 F.2d 1055, 1098 (2d Cir. 1988); United States v. Chestaro, 197 F.3d 600, 609 (2d Cir. 1999).  The burden is upon the defendant to show "that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict," United States v. Cala, 521 F.2d 605, 608 (2d Cir. 1975) (quoted in Citron, supra, 853 F.2d at 1098).  The defendant's burden here is a heavy one, especially since it involves determining the basis for a general jury verdict, Citron,

supra, 853 F.2d at 1098 (quoting United States v. Tramunti, 500 F.2d 1334, 1346 (2d Cir.), cert. denied, 419 U.S. 1079 (1974)).  Non-mutual collateral estoppel, where one party is barred from relitigating an issue decided in a previous proceeding but where the parties are not the same in the prior proceeding, does not apply in criminal cases, Standefer v. United States, 447 U.S. 10, 21-25 (1980); United States v. Ustica, 847 F.2d 42, 49 & n.14 (2d Cir. 1988).  One commentator has noted that acquittal in a criminal case has no collateral estoppel effect on defendant's civil liability arising from the same facts, provided that the civil action is not punitive, as a "logical consequence of the difference in the required burden of proof in criminal and civil cases," Moore's Federal Practice–Criminal Procedure § 629.22[4] (2007).  Similarly, an administrative proceeding has a different burden of proof than a criminal prosecution, even if both proceeding adjudicate on the factual issue of the nationality of the subject, see United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984) (precluding applying collateral estoppel between criminal acquittal and civil forfeiture action due to different burdens of proof).

 Defendant argues the estoppel effect of the administrative immigration proceedings to bind the Government to the finding that defendant is Cuban.  But that finding was rendered in an administrative setting rather than a criminal proceeding.  Cases in which collateral estoppel has been applied involved court judgments, such as criminal case impacting a second criminal trial, e.g., Ashe, supra, 397 U.S. 436, or a subsequent, but related civil proceeding, see, e.g., One Assortment of 89 Firearms, supra, 465 U.S. 354.  A finding of an administrative law judge does not preclude a subsequent criminal prosecution, United States v. Bustamente, 248 Fed. Appx. 763, 764 (8th Cir. 2007) (per curiam); see United States v. Payne, 2 F.3d 706, 708-10 (6th Cir. 1993) (per curiam) (termination of employment as mail carrier heard administratively while

government indicted for obstruction of the mail); United States v. Alexander, 743 F.2d 472, 477 (7th Cir. 1984) (administrative decision to stop defendant's mail held not to estop criminal prosecution for mail fraud).

This case is similar to Bustamente, where an administrative law judge made a finding as to defendant's citizenship and the Government then prosecuted defendant arguing the opposite of what the administrative law judge found. The Eighth Circuit upheld the subsequent charge against that defendant of with impersonating a United States citizen notwithstanding the administrative law judge's finding that defendant was a United States citizen, 248 Fed. Appx. at 764. Therefore, there **should be no collateral estoppel effect from the immigration judge's decision on defendant's nationality to preclude this prosecution**, and defendant's motion to dismiss on this ground **should be denied**.

        2.        Equitable Estoppel

Equitable estoppel is preclusion of a party, by its act, conduct or silence when it is its duty to speak, from asserting a right which it otherwise had, see Black's Law Dictionary, supra, at 538. The Second Circuit has noted that equitable estoppel is applied

> "'to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct,' [City of N.Y. v.] Shalala, 34 F.3d [1161], 1168 [(2d Cir. 1994)], and the Supreme Court has rarely, if ever, upheld a finding of estoppel against the United States, see Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 426-27 (1990),"

United States v. Paredes-Batista, 140 F.3d 367, 375 (2d Cir. 1998).

Defendant here has not alleged or shown any misrepresentation by the Government to warrant imposition of this form of estoppel. His only contention is that the INS form I-251B did

11

not state that a false statement thereupon may subject defendant to criminal liability (Docket No. 38, Def. Atty. Aff. ¶ 96), but a similar argument for applying equitable estoppel against the Government for omissions in its form was rejected in United States v. Paredes-Batista, supra, 140 F.3d at 375, holding it was "debatable" whether language in the Marshal Service form USM-17 for interstate agreement on detainers was a misrepresentation and there was no indication of affirmative government misconduct. Therefore, this **should not be a basis for dismissal of the Indictment**.

   D.  Interest of Justice

Defendant finally notes that he has been detained pending trial longer than his Guidelines sentence would be for this offense and, given these circumstances, he should be released (Docket No. 38, Def. Atty. Aff. ¶¶ 27, 100-01). During oral argument, the Government explained that a portion of defendant's time in detention was due to defendant changing his mind about a possible plea. Defendant also changed counsel during this period, further delaying this case.

Defendant alternative requests to be released on bail (Docket No. 38, Def. Atty. Aff. ¶ 101). Defendant does not argue any factors that eliminate defendant from being a flight risk or a danger to the community, cf. 18 U.S.C. § 3142(g), (d)(1)(B).

Dismissal of the Indictment on this basis also should be **denied** and defendant's alternative request to condition his release also is **denied**.

   E.  In Summary

As a result of the discussion above, Defendant's various grounds for dismissing this Indictment should be **denied**.

II.     Suppression of Defendant's Statements

Defendant moves to suppress his March 23, 2006, statement.  The Government concedes that defendant's interrogations of March 13 and 23, 2006, were custodial in nature but claims that he was advised of his Miranda rights (Docket No. 39, Gov't 2d Reply at 11, 12-14).  Defendant's first encounter at the Batavia Detention Center, on March 2, 2006, when he was processed for admission to the center, was not custodial interrogation by the Government; defendant did state during that interview that he was Cuban (id. at 11-12).  BICE agent Castro, of Dominican ancestry, was present during the March 2, 2006, interview and began to suspect defendant's response that he was Cuban (id. at 12), leading to the subsequent interrogations.

Defendant asserts that he was coerced during the latter two custodial interrogations.  The issue, then, is whether defendant was coerced during those sessions.  Defendant raised sufficient facts **to justify an evidentiary hearing** on that question.

## CONCLUSION

Based upon the above, it is recommended that defendant motion (Docket No. 38) to dismiss be **denied on all grounds asserted** and his motion to suppress **the Court will conduct an evidentiary hearing on Wednesday, April 23, 2008, at 2 pm, before the undersigned**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation**

13

in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 4, 2008