UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          **Hon. Hugh B. Scott**

                                                             06CR292A

JOSE ELIAS MERCEDES,                                       **Report**
                                                              **&**
                                    Defendant.           **Recommendation**

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C).

Now before the Court is defendant's motion (Docket No. 38[1]), renewing defendant's motion to

suppress his statements (see Docket No. 28). This motion also sought to dismiss the Indictment

as well as supplemental discovery (Docket No. 38). Responses to this renewed motion initially

were due on March 7, 2008, and the motion was argued on March 11, 2008 (Docket Nos. 37, 40).

This Court rendered a Report & Recommendation (Docket No. 42) as to the motion to dismiss

and ordered there that a suppression hearing be conducted. The hearing was held on May 16,

2008 (Docket Nos. 49, 50 (transcript)), and June 4, 2008 (text docket entry, June 4, 2008).

Separately, the Court addressed the remaining discovery motions in an Order (Docket No. 41).

---

[1]In support of this renewed motion is defense counsel's affidavit with exhibits, Docket
No. 38, post-hearing Memorandum, Docket No. 54, as well as moving papers from the initial
motion, Docket No. 28.
    In opposition, the Government filed its second reply statement, Docket No. 38, post-
hearing Reply Memorandum, Docket No. 55, as well as its initial reply statement, Docket No. 31.

This Court will address in this second Report & Recommendation defendant's remaining motion to suppress his statements.  Familiarity with the prior Orders (Docket No. 33, 41) and Report & Recommendation (Docket No. 42) is presumed.

BACKGROUND

At issue in this case is defendant's nationality, that is, whether he is Cuban or a citizen of the Dominican Republic, and whether he made false statements about his nationality to immigration agents.  Defendant moves to suppress statements he made to agents of the Bureau of Immigration and Customs Enforcement ("BICE") on March 10, 13, and 23, 2006, that were contradictory and allegedly false (Docket No. 38, Def. Atty. Aff. ¶ 13) about his nationality.

On March 2, 2006, defendant was processed into the Batavia Federal Detention Center (while awaiting deportation) and he indicated there that he was Cuban (id. ¶ 19).  On March 10, 2006, defendant asked BICE agent Alvi Castro about his immigration status and his nationality. Although defendant claimed that he was Cuban, Castro detected what appeared to him to be a Dominican accent (see Docket No. 54, Def. Memo. at 2, citing Hearing of May 16, 2008, Tr. at 4-5; Docket No. 50, Tr. at 4-5).  On March 13, 2006, defendant was interviewed by BICE agent Castro and defendant again stated that he was Cuban (Docket No. 38, Def. Atty. Aff. ¶ 20). Defendant was questioned again on March 23, 2006, by agent Castro and defendant admitted that he was, in fact, a Dominican (id. ¶ 21).

*Charges*

On May 26, 2006, defendant was charged in a criminal Complaint with conniving, conspiring, or taking other action to hamper his deportation (in violation of 8 U.S.C. § 1253(a)(1)(C)) and making a materially false statement, in violation of 18 U.S.C. § 1001(a)(2)

(Docket No. 1).  On September 6, 2006, defendant was indicted in a single count Indictment for

making a false statement, in violation of 18 U.S.C. § 1001(a)(2), namely about his nationality

(Docket No. 8).  The Indictment charges that defendant falsely stated to an agent of BICE that he

was a citizen of Cuba when, in fact, he was a citizen of the Dominican Republic (id.; see Docket

No. 28, Def. Atty. Aff. ¶ 2).

*Motion to Suppress Statements*

    Defendant moves to suppress his statements made to BICE officer Castro while in the

Batavia Federal Detention Center on March 13 and 23, 2006 (Docket No. 54, Def. Memo. at 1).

Defendant contends that these statements were the product of illegal custodial interrogation and

induced by coercion and duress (Docket No. 38, Def. Atty. Aff. ¶ 103).

    The Government replies that defendant here was advised of his Miranda rights before

being questioned by Castro (Docket No. 39, Gov't 2d Reply at 10-15).  The Government

concludes that no hearing is necessary here because defendant fails to support his factual

allegations (id. at 14).

*Evidentiary Hearing*

    At the evidentiary hearing, the Government produced BICE agents Castro and Vincent

Pulcini to testify to the March 2006 questioning of defendant.  On March 10, 2006, defendant

initiated a conversation, in English, with agent Castro, asking how long defendant would be in

BICE custody in light of his status as a Cuban national and his belief that Cubans are retained for

90 days (Docket No. 55, Gov't Reply Memo. at 2; Docket No. 50, May 16, 2008, Tr. at 4-5).

Castro, Dominican by birth, was suspicious of defendant's claim of Cuban citizenship because

defendant's accent sounded Dominican (Docket No. 55, Gov't Reply Memo. at 2; Docket

No. 50, May 16 Tr. at 4-5).  Although an administrative officer, Castro also could investigate

criminal matters such as false claims of nationality (Docket No. 55, Gov't Reply Memo. at 2;

Docket No. 50, May 16 Tr. at 6, 45-46).  Castro then examined Batavia Detention Facility

telephone records for defendant's calls and found two numbers with Dominican area codes.  He

dialed one number and reached a Francesca Delmonte Ozuna and Ms. Ozuna told Castro that the

defendant was her son and that she would transmit to him a copy of his baptismal certificate.

(Docket No. 55, Gov't Reply Memo. at 2-3; Docket No. 50, May 16 Tr. at 7).

Castro then interviewed defendant on March 13, 2008, in the interview room of the

processing area of the Batavia facility (Docket No. 55, Gov't Reply Memo. at 3; Docket No. 50,

May 16 Tr. at 9).  Castro testified that the purpose of this interview was to establish the proper

nation for deportation proceedings (Docket No. 50, May 16 Tr. at 8).  Defendant was brought in

without restraints and the door was open and no other officers were in the room except Castro

(Docket No. 55, Gov't Reply Memo. at 3; Docket No. 54, Def. Memo. at 2; Docket No. 50,

May 16 Tr. at 9, 10).  Castro advised defendant of his Miranda rights and provided verbal

warnings and a written advisement of rights form in English and Spanish (Docket No. 54, Def.

Memo. at 2; Docket No. 55, Gov't Memo. at 3; Docket No. 50, May 16 Tr. at 12, Gov't Ex. 1).

Defendant signed this statement (Docket No. 55, Gov't Memo. at 3; Docket No. 50, May 16 Tr.

at 12, Gov't Ex. 1).  Castro told defendant that he was investigating defendant's nationality and

asked him where he was born.  Defendant answered that he was born in Cuba and came to the

United States in 1980 as part of the Mariel boat lift and that both his parents were Cuban

nationals (Docket No. 55, Gov't Memo. at 3; Docket No. 50, May 16 Tr. at 13).  Castro

summarized this conversation and wrote it (in English) on the advisement of rights form which

he then read to defendant (Docket No. 54, Def. Memo. at 2; Docket No. 50, May 16 Tr. at 13).

Defendant then signed that statement as true and correct (Docket No. 55, Gov't Reply Memo. at

3-4; Docket No. 50, May 16 Tr. at 14).  Castro stated that he did not yell or raise his voice to

defendant during this interview and that at no point did defendant wish to terminate the interview

or ask to have an attorney present during it (Docket No. 50, May 16 Tr. at 14).

Castro further investigated defendant's claimed nationality by contacting the American

Embassy in the Dominican Republic and to arrange for an interview of Ms. Ozuna, defendant's

purported mother (Docket No. 55, Gov't Reply Memo. at 4).  At her interview, Ms. Ozuna was

shown a photograph of defendant and she stated that he was her son, she also provided a sworn

statement as to how defendant first entered the United States and a copy of his birth certificate

(id.).

Armed with this documentation, Castro conducted another interview (with agent Pulcini)

of defendant on March 23, 2006.  Castro this time sought to interview defendant "to show him

the evidence [he had], showing that [defendant] was a citizen and national of the Dominican

Republic so [Castro] could proceed with [his] deportation proceedings to the Dominican

Republic," indicating that Castro wanted to speak with defendant again about his citizenship

(Docket No. 50, May 16 Tr. at 19).  Again, Castro advised defendant of his Miranda rights

verbally and in writing with the English and Spanish advisement of rights form, and defendant

signed the written advisement of rights form.  (Docket No. 55, Gov't Reply Memo. at 4; Docket

No. 54, Def. Memo. at 3; Docket No. 50, May 16 Tr. at 19, 20, 25, Gov't Ex. 2).  This interview

was conducted entirely in English because agent Pulcini was present and he did not understand

Spanish (Docket No. 54, Def. Memo. at 6, citing June 4, 2008, Tr. at 147).  At the beginning of

this interview, defendant continued to claim Cuban citizenship (Docket No. 55, Gov't Reply

Memo. at 4; Docket No. 50, May 16 Tr. at 22).  Upon being confronted with the birth and

baptismal certificates and his purported mother's sworn statement (written in English), defendant

admitted that the Dominican birth certificate was his and signed it (Docket No. 54, Def. Memo.

at 3; Docket No. 55, Gov't Reply Memo. at 5; Docket No. 50, May 16 Tr. at 22-24, 27).

Defendant then was asked to write out a statement in his own words about his nationality and his

entry into the United States; in that statement (written in English) he admitted that he claimed he

was Cuban (rather than Dominican) to avoid deportation (Docket No. 55, Gov't Reply Memo. at

5; Docket No. 50, May 16 Tr. at 24; Gov't Ex. 2).  During the course of this interview, defendant

did not ask for it to end or request the presence of counsel (Docket No. 55, Gov't Reply Memo.

at 5; Docket No. 50, May 16 Tr. at 23).  Pulcini testified that he and Castro raised their voices

during this interrogation (Docket No. 54, Def. Memo. at 7; June 4 Tr. at 159), although Castro

earlier testified that he did not raise his voice or yell at defendant, become angry or aggressive

during this March 23 interview (Docket No. 50, May 16 Tr. at 23-24).

On cross-examination, Castro stated that his dual role as an administrative and criminal

investigator for BICE was not explained to inmates (Docket No. 54, Def. Memo. at 4; Docket

No. 50, May 16 Tr. at 46).

*Post-Hearing Arguments*

Defendant contends that there was no statement to him that agent Castro's interviews

were for a criminal investigation as well as an administrative investigation (Docket No. 54, Def.

Memo. at 4).  There also was not evidence of defendant's comprehension of what his Miranda

rights were (id. at 9-10).  He believes that agent Castro was engaged in a two-stage process to

create the criminal offense of repeatedly asking defendant about his nationality to have defendant

give an inconsistent response (id. at 12). Agent Castro did not know if defendant could read

English, hence the waiver of right form in English and Spanish may say distinct things (id. at 16).

In addition, showing Castro's English version of defendant's statement (id. at 4) may be

ineffective. Defendant notes that Castro acted as both interpreter and interrogator (id. at 5-6; see

Docket No. 50, May 16 Tr. at 93).

The Government responds that the totality of the circumstances support upholding

defendant's statements from suppression. First, as for the circumstances of the accused,

defendant was familiar with the criminal justice process and his rights during interrogations from

his prior criminal proceedings. The Government argues that there is nothing in defendant's

character that would suggest that his will was overborne by agent Castro in his questioning.

(Docket No. 55, Gov't Reply Memo. at 6-7.) As for the circumstances of the interrogation,

defendant was not placed in physical restraints and was questioned in the regular intake interview

room (id. at 8). As for the conduct of law enforcement officers, there was no coercion in the

conduct of the questioning and it occurred over two days apart, distinguishing it from cases held

to be coercive where questioning occurred over consecutive days (id. at 9-10). The Government

argues that the advisement of rights form was proper and passes constitutional muster (id. at 11-

14). The Government concludes that defendant comprehended English and Spanish when he

waived his rights (id. at 14-15).

DISCUSSION

I.      Suppression of Defendant's Statements

Defendant moves to suppress his March 13 and 23, 2006, statements.  The Government

concedes that defendant's interrogations of March 13 and 23, 2006, were custodial in nature but

claims that he was advised of his Miranda rights (Docket No. 39, Gov't 2d Reply at 11, 12-14).

Defendant asserts that he was coerced during the latter two custodial interrogations.  The

custodial nature of this questioning is not in question.  The issue, then, is whether defendant

knowingly and voluntarily waived his rights.

        A.      Standard

Whether a confession is voluntary is determined by the totality of circumstances,

Schneckloth v. Bustamente, 412 U.S. 218, 226 (1973) (Docket No. 54, Def. Memo. at 7-8).  The

Government has the burden of establishing, by a preponderance of the evidence, that a suspect

waived his Miranda rights and that his subsequent confession was the product of free choice,

Colorado v. Connelly, 479 U.S. 157, 168-69 (1986) (id. at 8).  The Second Circuit recognizes at

least three elements for the totality of these circumstances:  the accused's characteristics, the

conditions of the interrogation, and the conduct of the law enforcement officers, see Parsad v.

Greiner, 337 F.3d 175, 183 (2d Cir. 2003); United States v. Anderson, 929 F.2d 96, 99 (2d Cir.

1991); see also Schneckloth, supra, 412 U.S. at 226; Johnson v. Zerbst, 304 U.S. 458, 464

(1938).

        B.      Which Instances Are at Issue

Defendant moves to suppress his statements made on March 13 and 23, 2006 (see Docket

No. 54, Def. Memo. at 2, 3), while the Government urges that the March 10 and 23, 2008

statements should not be suppressed (Docket No. 55, Gov't Reply Memo. 5), while also arguing that the March 13, 2006, conversation was consensual (id. at 3).

The conversations on March 13 and 23 are at issue.  Defendant is not contesting his initiating statements of March 10, 2006, to Castro when he approached the agent about defendant's continued detention given his claimed Cuban citizenship (see Docket No. 54, Def. Memo. at 8-9).

II.      Application

A.      Generally

Conditions for these interviews did not vary between the March 13 and March 23 interrogations.  Both occurred at the instance of agent Castro in the Batavia Federal Detention Center's interview room.  Castro stated the purported reason for each interview was to confirm defendant's nationality for deportation purposes, ultimately to send defendant to the correct nation.  Defendant was not brought in any physical restraints for either interrogation and the agents did not have sidearms (Docket No. 50, May 16 Tr. at 9).  Defendant was made to read English texts of documents (save the Spanish version of the advisement of rights forms (see Docket No. 50, May 16 Tr. at 10-11, 12, 25, Gov't Ex. 1, page 2, Gov't Ex. 2, page 3)) and he acknowledged those documents by signing or initialing them.  Castro testified that he asked defendant if he understood English and defendant claimed that he did, although Castro did not inquire whether defendant could read English (Docket No. 50, May 16 Tr. at 65, 66).

Although defendant argues that there is no record of his familiarity with Miranda rights (Docket No. 54, Def. Memo. at 9-10), defendant has been in the criminal judicial system in prior state proceedings.  Agents Castro and Pulcini testimony do not indicate that defendant was

unaware of those rights when he was questioned.  What was not expressly disclosed to defendant

was that the investigation was <u>criminal</u> rather than merely administrative.  Castro also did not

disclose his dual role as an administrative as well as criminal investigator.  The English version

of the advisement of rights form, a portion of an Immigration and Naturalization Service Record

of Sworn Statement in Affidavit Form (hereinafter "Immigration Sworn Statement"), did not

expressly disclose that statements could be used in a criminal prosecution, but the form did state

that "anything [defendant says] can be used against you in court, or in any immigration or

administrative proceeding" (<u>e.g.</u>, Docket No. 50, May 16 Tr. at 11, 20-21, Gov't Exs. 1, 2; <u>see</u>

Docket No. 54, Def. Memo. at 14), and such advisement is only required in a criminal

prosecution.  Castro testified that the Spanish version of the form states that defendant's

statement could be used for criminal proceedings (Docket No. 54, Def. Memo. at 14 n.5, 5 & n.

2, June 4 Tr. at 92).

Defendant read the English-language text and later wrote his statement on the second

Immigration Sworn Statement on March 23 (Gov't Ex. 2) in English, without testimony that he

did not understand written English.  Thus, the English text merely advising that the subject's

statements could be used "in court" coupled with the Spanish text references to include criminal

proceedings gave defendant here adequate notice that his statements may be used criminally as

well as administratively, <u>see</u>  United States v. Yousef, 327 F.3d 56, 123 (2d Cir. 2003) (Docket

No. 55, Gov't Reply Memo. at 12, 13).  "The requirements of <u>Miranda</u> are met only when the

warning reasonably conveys to a suspect his rights," <u>United States v. Tehrani</u>, 826 F. Supp. 789,

803 (D. Vt. 1993) (Parker, Ch.J.) (citing <u>Duckworth v. Eagan</u>, 492 U.S. 195, 203 (1989)).  In a

criminal prosecution arising from an administrative arrest of illegal aliens advised their rights

from an Immigration and Naturalization Service form, the district court in <u>Tehrani</u> found that

there is no "'talismanic incantation'" of <u>Miranda</u> warnings that a suspect should be advised, but

the cases have held that a suspect should be advised of his or her right to remain silent, that

anything said by them may be used against them, and their right to have counsel present (even if

appointed) during the interrogation, 826 F. Supp. at 803.  The <u>Tehrani</u> court held that the

administrative warning failed to advise the alien defendants of their right to remain silent, a

"blatant" and "fatal" violation of <u>Miranda</u>, <u>id.</u> at 803, 804.  That administrative warning also

failed to tell the defendants that their statements could be used in a court of law, <u>id.</u> at 804, 797.

The court then granted, in part, defense suppression motion based upon these deficiencies in the

administrative warning for use in a subsequent criminal proceeding, <u>id.</u> at 804.

In the present case, defendant was advised in two languages that he had the right to

remain silent, that what he said could be used against him in court or in administrative

proceedings, that he had the right to an attorney and could stop the interrogation at any time until

he could speak with a lawyer.  These immigration warnings do not have the deficiencies found in

<u>Tehrani</u> to render defendant's statements inadmissible.

B.      March 13, 2006

In this first interview session, defendant reiterated that he was Cuban, signing the written

statement (drafted by agent Castro) to that effect in the first Immigration Sworn Statement.

Considering the totality of the circumstances, defendant was advised of his rights in two

languages (English and Spanish) and he appeared to understand them.  The conditions of the

interrogation were not oppressive enough to make defendant's waiver involuntary.  Castro was

not so overbearing as to make defendant's statement (the statements consistent with his contention that he was Cuban) compelled.  Therefore, this statement should **not be suppressed**.

        C.       March 23, 2006

During this session, defendant admitted that he was a Dominican and was falsely claiming that he was Cuban to avoid deportation.  One difference from the earlier session is defendant's contention that Castro and Pulcini raised their voices during this interrogation (Docket No. 54, Def. Memo. at 7; June 4 Tr. at 159 Pulcini's testimony)), although agent Castro disputes whether he was angry or aggressive toward defendant on this occasion (Docket No. 50, May 16 Tr. at 23-24).  Another difference, mentioned above, is that defendant wrote out his statement, in English, on the Immigration Sworn Statement, making those admissions.

As with the earlier March 13 interview, the totality of the circumstances does not support suppression.  Again, defendant appears aware of his rights and was advised them in the two languages defendant was fluent in.  Although the agents dispute whether either of them yelled, the conduct of the interrogation was not so overbearing as to have overwhelmed defendant's will. Defendant had read the acknowledgment of rights prior to questioning by Castro and Pulchini. As a result, defendant's motion to suppress his statements rendered during this session should be **denied**.

CONCLUSION

Based upon the above, it is recommended that defendant motion (Docket No. 38) to suppress be **denied** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
           September 5, 2008